USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 12/1/10

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA          :

     - against -                  :

SHARIF SUMNER,                    :

             Defendant.     :

- - - - - - - - - - - - - - - - - -x

MEMORANDUM DECISION

08 Cr. 824 (DC)
10 Civ. 2932 (DC)

**APPEARANCES:**    PREET BHARARA, ESQ.
                       United States Attorney for the
                       Southern District of New York
                           By: Randall W. Jackson, Esq.
                              Assistant United States Attorney
                       One Saint Andrew's Plaza
                       New York, New York  10007

                       SHARIF SUMNER
                       Defendant Pro Se
                       Federal Correctional Institution, McKean
                       P.O. Box 8000
                       Bradford, Pennsylvania  16701

**CHIN, Circuit Judge.**

        Defendant Sharif Sumner pled guilty on March 6, 2009 to one count of conspiracy to distribute and possess with intent to distribute heroin and one count of conspiracy to distribute and possess with intent to distribute cocaine, in violation of 21 U.S.C. § 846. On June 8, 2009, I sentenced him to a term of imprisonment of 108 months on each count, to run concurrently. Now proceeding pro se, Sumner moves pursuant to 28 U.S.C. § 2255

to vacate, set aside, or correct his sentence. Sumner makes the following claims: (1) he was actually innocent of both conspiracies; (2) his sentence was excessive; and (3) he received ineffective assistance of counsel. For the reasons set forth below, his motion is denied.

## BACKGROUND

### A.  The Facts

In March 2008, a confidential informant (the "CI") told an agent of the U.S. Immigrations and Customs Enforcement ("ICE") that Sumner had approached the CI, offering to sell him 500 grams of heroin. (PSR ¶ 9).[1] During a series of recorded phone calls, Sumner later agreed to sell 1,000 grams of heroin to the CI for $60,000. (Id. ¶ 10). ICE monitored a meeting between the two on April 14, 2008, when Sumner provided the CI with a 12.8-gram sample of heroin. (Id. ¶ 11). On the appointed delivery date, April 23, 2008, Sumner met the CI but relayed that his supplier

---

[1] References are as follows: "Plea Agmt." for the plea agreement dated January 14, 2008; "Plea Tr." for the transcript of Sumner's plea allocution; "PSR" for the Presentence Report dated May 29, 2009; "Sen. Tr." for the transcript of Sumner's sentencing; "Pet. Mem." for Sumner's memorandum in support of his § 2255 motion, dated March 4, 2010; "Gov't Resp." for the government's response to Sumner's habeas motion, dated August 2, 2010; "Pet. Resp." for Sumner's response to the government's response, dated September 1, 2010.

had only 750 grams of heroin remaining. (Sen. Tr. 12-13; PSR ¶ 12).[2] After renegotiating the price, Sumner drove away to retrieve the heroin, followed by ICE agents in unmarked vehicles. (PSR ¶ 12). He drove erratically before abandoning his vehicle and walking away. In a May 1, 2008 phone conversation with the CI, Sumner remarked that he had noticed some "funny stuff" and had decided to abandon the transaction. (Id. ¶ 13). The transaction was never completed.

Later that summer, Sumner agreed to buy one kilogram of cocaine from the CI. (Id. ¶ 14). By the terms of their agreement, Sumner would pay $5,000 upon receiving the drugs and $20,000 more after the cocaine had been sold. (Id.). ICE agents provided the CI with a black duffel bag containing "sham" cocaine. (Id. ¶ 15). On August 26, 2008, Sumner and the CI met in Manhattan; after apologizing for being "short" on the cash, Sumner exchanged $3,500 for the bag of "sham" cocaine. (Id. ¶¶ 15-16). ICE agents approached and arrested Sumner once he returned to his vehicle. (Id. ¶ 16).

---

[2] Although the Presentence Report ("PSR") stated that "[Sumner] only had 750 grams of heroin left" (PSR ¶ 12), Sumner's counsel challenged that portion of the report (Sen. Tr. 12). As the government did not object, I modified the challenged portion to read that Sumner's supplier had only 750 grams of heroin remaining. (Id. at 12-13).

Sumner waived his Miranda rights and, in post-arrest statements, identified two individuals peripherally involved in the cocaine transactions. (Id. ¶ 17). According to Sumner, "Boogie" and "Man Man" had provided some of the $3,500 used to buy the "sham" cocaine. (Id.). In addition, Sumner stated that he had planned to deliver the cocaine to them for re-sale in smaller quantities. (Id.). Finally, he also indicated that his relationship with his former heroin supplier had ended approximately two months earlier. (Id.).

B.   **Prior Proceedings**

On March 6, 2009, Sumner was charged with one count of conspiracy to distribute and possess with intent to distribute heroin and one count of conspiracy to distribute and possess with intent to distribute cocaine. (PSR ¶¶ 2-3). He signed a plea agreement, which stated that he "decided to plead guilty because he is in fact guilty." (Plea Agmt. 5, 7; see also Plea Tr. 12-16). In his allocution before Magistrate Judge Gabriel W. Gorenstein, he admitted to having discussed distributing more than 100 grams of heroin and more than 500 grams of cocaine (Plea Tr. 12-13), in violation of 21 U.S.C. §§ 846, 841(b)(1)(B).[3]

---

[3]   The relevant provisions in § 841 establishes a mandatory minimum sentence of five years' imprisonment for

The PSR grouped the charges pursuant to § 3D1.1(a) of the Guidelines Manual, yielding an aggregate drug equivalency of 950 kilograms of marihuana. (PSR ¶¶ 22-23). Sumner's base offense level was 30, but he received a three-level reduction for his timely plea and allocution. (Id. ¶¶ 23, 29). As a result, based on an offense level of 27 and a criminal history category of IV, the PSR calculated a Guidelines range of 100 to 125 months' imprisonment. (Id. ¶ 6(d)-(f)).

Sumner appeared before me for sentencing on June 8, 2009. I asked him to clarify whether a co-conspirator besides the CI (who was working for the government) had been involved in the crimes with which Sumner had been charged. (Sen. Tr. 3-11). Sumner affirmed that a third party was involved in the heroin sale:

> THE COURT: So you had a discussion with that other person and you agreed that he was going to give you heroin and then you were going to sell that heroin to [the CI]?
> THE DEFENDANT: Yes, sir.
> THE COURT: That's true?
> THE DEFENDANT: Yes, sir.

---

distributing or possessing with intent to distribute "100 grams or more of . . . heroin" and "500 grams or more of . . . cocaine." 21 U.S.C. § 841(b)(1)(B)(i)-(ii). Section 846, the conspiracy statute, incorporates § 841 by reference. Id. § 846.

(Id. at 6; see also id. at 5). In addition, I asked Sumner about how he financed his cocaine purchase:

> THE COURT: Where did you get that money from?
> THE DEFENDANT: Partial money was mine and partial money was from other people.
> THE COURT: And those other people gave it to you knowing that you were going to use the money to buy cocaine?
> THE DEFENDANT: Right.

(Id. at 11). The government also noted that the quantity of cocaine involved exceeded amounts attributable to personal use. (Id. at 10). I was satisfied with Sumner's answers to my questions, and I adopted the PSR's findings of fact as my own (id. at 13-14), accepted Sumner's plea (id. at 11), and sentenced him to a term of 108 months' imprisonment on each count, to run concurrently (id. at 24).

In his plea agreement, Sumner waived his right to appeal his sentence. (Plea Agmt. 5). In particular, he agreed that he "[would] not file a direct appeal, nor litigate under Title 28, United States Code, Section 2255 and/or 2241, any sentence within or below the Stipulated Guidelines Range set forth above (100-125 months' imprisonment)." (Id.). Sumner specifically acknowledged during the plea allocution that he would not appeal a Guidelines sentence:

>THE COURT:  Do you understand that under the
>terms of this agreement, if you get a
>sentence of 125 months or less, you are
>giving up your right to challenge that
>sentence --
>THE DEFENDANT:  Yeah.
>THE COURT:  -- either through an appeal to
>the Court of Appeals or through an
>application to the trial judge such as a writ
>of habeas corpus?  Do you understand that?
>THE DEFENDANT:  Yes, sir.

(Plea Tr. 11).

Sumner did not file a direct appeal to challenge the adequacy of his sentence or his underlying conviction. He timely filed this petition pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence.

## DISCUSSION

Sumner's motion is denied. First, he waived his right to challenge his conviction and sentence, whether by a motion under 28 U.S.C. § 2255 or otherwise. Second, even assuming that Sumner is not precluded from making this challenge, the motion fails on the merits.

A.   **Waiver of Right to Appeal**

The government argues that petitioner's motion should be denied because he waived his right to challenge his conviction. (Govt' Resp. 8-11). I agree.

1.   **Applicable Law**

Parties to a plea agreement may waive their right to appeal. See Frederick v. Warden, Lewisburg Corr. Facility, 308 F.3d 192, 195 (2d Cir. 2002). So long as the waiver was made knowingly and voluntarily, the Second Circuit holds such waivers enforceable. United States v. Djelevic, 161 F.3d 104, 106-07 (2d Cir. 1998). To find otherwise would "render the plea bargaining process and the resulting agreement meaningless." United States v. Salcido-Contreras, 990 F.2d 51, 53 (2d Cir. 1993).

Such waivers notwithstanding, a petitioner may challenge the "constitutionality of the process by which he waived those rights." United States v. Hernandez, 242 F.3d 110, 113 (2d Cir. 2001); see also Frederick, 308 F.3d at 195-96. For example, this Circuit deems waivers secured without the benefit of effective counsel unenforceable. Djelevic, 161 F.3d at 107; see also Hernandez, 242 F.3d at 114 (explaining that "'the very product of the alleged ineffectiveness' cannot fairly be used to bar a claim of ineffective assistance of counsel" (quoting Jones v. United States, 167 F.3d 1142, 1145 (7th Cir. 1998))).

2.   **Application**

According to the terms of his plea agreement, Sumner agreed not to appeal "any sentence within or below" the Guidelines range, 100-125 months' imprisonment. (Plea Agmt. 5).

I sentenced him to 108 months on each count, within the stipulated range. Sumner's motion is denied because he waived his right to appeal or otherwise challenge a Guidelines sentence, and the record establishes that his waiver was knowing, voluntary, and intelligent. First, Judge Gorenstein specifically asked Sumner whether he understood that he was giving up his right to appeal if he received a Guidelines sentence; Sumner responded in the affirmative. (Plea Tr. 10). Second, he confirmed that he had discussed the plea agreement with his attorney and that he had not been induced or forced to enter into the plea agreement. (Id. at 9-10). Third, he confirmed that he was satisfied with his attorney's representation. (Id. at 5). Consequently, the plea agreement is valid, as is its waiver.

Sumner has not pointed to any facts that would suggest otherwise. Thus, he is precluded from challenging his conviction on this ground. Moreover, although Sumner does argue that he received ineffective assistance of counsel, this argument fails for the reasons set forth below.

B.  **Merits**

Generally, a defendant forfeits those claims that were not first asserted on direct review. United States v. Munoz, 143 F.3d 632, 637 (2d Cir. 1998). In limited circumstances, however,

a defendant may overcome such an omission.  For example, "[w]here a defendant has procedurally defaulted a claim by failing to raise it on direct review," he may raise it in habeas review if he establishes "that he is 'actually innocent.'"  Bousley v. United States, 523 U.S. 614, 622 (1998) (citations omitted); see also Rosario v. United States, 164 F.3d 729, 732 (2d Cir. 1998) (citing Bousley).  Furthermore, allegations of ineffective assistance of counsel may also overcome a procedural bar.  Zhang v. United States, 506 F.3d 162, 166 (2d Cir. 2007) (citing Massaro v. United States, 538 U.S. 500, 505-06 (2003)).

Sumner never filed a direct appeal.  Instead, he submitted this § 2255 petition, through which he advances three substantive claims:  (1) he was actually innocent, (2) his sentence was excessive, and (3) he received ineffective assistance of counsel.  Of those claims, the second argument is procedurally barred.  Nevertheless, even assuming that Sumner did not waive his right to appeal and his claims were not procedurally barred, his motion must be denied on the merits.  His three substantive claims are addressed in turn below.

1. **Actual Innocence**

Sumner contends that his allocution never established his participation in a conspiracy.  His argument takes two forms:

-10-

First, he never entered into an agreement with anyone besides an informant working with the government. Second, as to the heroin conviction, his admission regarding quantity referred only to the aggravated offense quantity. Based on a review of the record, I find his actual innocence claim fails because (1) sufficient evidence established his agreement with third parties and (2) his admission to the aggravated offense quantity was a sufficient basis for the conviction.

      a.    Applicable Law

The essence of a conspiracy is "the agreement of two or more persons to commit a criminal act." United States v. Gore, 154 F.3d 34, 40 (2d Cir. 1998). In this Circuit, "the evidence must at least demonstrate the existence of the unknown co-conspirators and their complicity." Id. at 41. An individual cannot conspire with an undercover government agent alone; a third party must also participate in the joint venture. See United States v. Goldberg, 756 F.2d 949, 958 (2d Cir. 1985); United States v. Barnes, 604 F.2d 121, 161 (2d Cir. 1979).

Although the buyer-seller relationship does not itself establish a conspiracy, United States v. Rojas, 617 F.3d 669, 674 (2d Cir. 2010), circumstances differ when large quantities are

involved. This Circuit has "frequently noted that 'one who deals in large quantities of narcotics may be presumed to know that he is part of a venture which extends beyond his individual participation.'" United States v. Murray, 618 F.2d 892, 902 (2d Cir. 1980) (quoting United States v. Magano, 543 F.2d 431, 433-34 (2d Cir. 1976)). Cf. United States v. Medina, 944 F.2d 60, 65 (2d Cir. 1991) (buyer-seller relationship involving small quantities of drugs is insufficient to establish a conspiracy).

In conspiracies that reference the aggravated offense provisions in 21 U.S.C. § 841(b)(1), drug quantity is an element of the offense charged. United States v. Thomas, 274 F.3d 655, 663 (2d Cir. 2001) (en banc). Thus, that quantity "must be pleaded and proved to a jury or admitted by a defendant to support any conviction on an aggravated drug offense." United States v. Gonzalez, 420 F.3d 111, 133-34 (2d Cir. 2005).

Following a conviction, the bar for succeeding on a claim of legal innocence is quite high. According to the Supreme Court, the petitioner must prove that, given the new evidence, "'it is more likely than not that no reasonable juror would have convicted him.'" Bousely, 523 U.S. at 623 (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)); see also DeJesus v. United States, 161 F.3d 99, 103 (2d Cir. 1998). This standard rests on